LIBERTY NATIONAL BANK OF WASHINGTON, a corporation, Plaintiff,

v.

Minona Donn SMOOT et al., Defendants.

Civ. A. No. 2582-54.

United States District Court District of Columbia.

Oct. 19, 1955.

Weaver & Glassie, Thomas M. Cooley, II, Washington, D. C., for the Liberty Nat. Bank.

James J. Laughlin and Albert J. Ahern, Jr., Washington, D. C., for defendant.

McGARRAGHY, District Judge.

This is a proceeding for the construction of the will of Edward W. Donn, Jr., and the complaint presents three questions to be determined, as follows:

"First: Under Clause Third of the said will, what interest, if any, does Minona Donn Smoot take in existing circumstances? Said clause opens with the language 'If I am survived by my two sisters, Elizabeth Donn Bryant, 10 E. Bradley Land, Chevy Chase, Md., and Minona Donn Smoot, Tilden Gardens, Washington, D. C., I give, devise and bequeath unto them all my property, real, personal and mixed, equally, * * *'. Testator was not survived by the two named sisters, but by one of them only, namely, Minona Donn Smoot.

"Second: Clause Sixth of the will appoints the plaintiff as executor and trustee 'to distribute to the beneficiaries, devisees and legatees hereunder, any property of any character of which I die the owner or which comes into my estate during administration.' Under this clause, the question is whether the plaintiff is required to undertake sufficiently active duties so that it must take title to the real estate and proceed with its distribution as the will directs.

"Third: At the time of decedent's death, there were outstanding two executed contracts of sale of certain District of Columbia real estate in which decedent had an interest and in which certain infants also had an interest, and the contracts were made subject to confirmation by the court because of the interest of said infants. The question presented by the complaint with respect to the real estate involved in these contracts is whether such contracts worked an equitable conversion so that the plaintiff holds the proceeds thereof as personalty."

### First Question

The language contained in the third clause of the will "If I am survived by my two sisters" * * * "I give to them equally" * * * is capable of being literally construed to mean that both sisters must actually survive testator in order for them to receive testator's residuary, which they are to share equally. Testator having failed to provide for a disposition of his estate in the circumstances as they developed, namely, one sister predeceasing him, the

question arises—was it testator's intent that the circumstance be covered by the will as he wrote it, or has he neglected to provide for a disposition under the facts as they developed?

The position of the Courts in this jurisdiction in construing a will is set forth in George Washington University v. Riggs Nat. Bank of Washington, D. C., 66 App.D.C. 389, 88 F.2d 771, 772, as follows:

"'Where there is nothing in the will itself to show the intention of the testator as to the disposition of his property in the condition which has actually arisen, the court cannot hold that the will disposes of the property in a particular way, on the supposition that the testator would probably have disposed of it in that way if his attention had been called to the particular circumstances.'"

If testator has failed to provide, either in the will itself, or from his language viewed in the light of circumstances which surrounded him when he wrote the will, some indication as to his intent on the particular point sought to be clarified, this Court is without power to place any construction on the will or parts thereof. Baker v. National Sav. & Trust Co., 86 U.S.App.D.C. 161, 181 F.2d 273.

The stipulated facts disclose that at the time testator wrote his will in 1941, his nearest relatives were his two sisters. The next nearest relatives were a nephew and a niece of a previously deceased sister. To each of the latter, testator bequeathed One Thousand Dollars. To his sisters he devised the remainder of his estate, with request for certain payments. What better indicia of intent can be presented to the Court than the manner in which the testator attempted to dispose of his property. Such a wide disparity in the amounts of the bequests —virtually excluding the relatives other than his sisters—can only indicate that the testator wanted these two sisters preferred to the virtual exclusion of all his other relatives.

This, then, was the intent of the testator. In order to give effect to that intent, it remains for the Court to determine what estates were given the sisters.

The law is well settled that where a testator devises an estate to named persons, to be divided equally, those persons take as tenants in common. George Washington University v. Riggs Nat. Bank of Washington, D. C., supra; Partridge's Lessee v. Colegate & Garretson, 1793, 3 Har. & McH. 339.

In Massachusetts, the Court expressed the general view in saying:

"It is a well recognized rule that when there is a gift to several legatees described by name of an aggregate sum to be divided equally among them, if one dies before the testator, his share will lapse." Boston Safe Deposit & Trust Co. v. Reed, 229 Mass. 267, 118 N.E. 333, 336.

The only circumstances which will abrogate this rule are those which the Court went on to discuss. (Supra).

"This rule will not be enforced when it is clear that the testator intended that the persons named were to take the fund bequeathed as a class and not as individuals, and the survivors of the legatees named should take the whole fund bequeathed."

Section 816, Title 45, D.C.Code 1951 states:

"Every estate granted or devised to two or more persons in their own right * * * shall be a tenancy in common, unless expressly declared to be a joint tenancy * * *."

The estate in question is, therefore, either a tenancy in common or a class gift. The requisites for a class gift in this jurisdiction are explicitly set forth in the case of Evans v. Ockershausen, 69 App.D.C. 285, 100 F.2d 695, 128 A.L.R. 177.

Two points in the instant case indicate clearly that this gift does not come within the classification of a class gift as defined (supra). The first point is that the

beneficiaries are named. A fair interpretation of the law in this jurisdiction indicates that such a designation is fatal. The second point is that after bequeathing the property to the sisters equally, the third clause of testator's will continues with the "request that they pay out of it" certain monies. Testator considered, therefore, that this was to be a common fund at his death, not property which was to be divided among class members at his death.

It should be noted on this point that there was a will written entirely by testator; there was no intervening scrivener reducing testator's intentions to writing.

There being no class gift, the estate given to the two sisters is a tenancy in common. Having predeceased testator, the gift to Elizabeth Donn Bryant lapses, and will pass as intestate property. George Washington University v. Riggs Nat. Bank of Washington, D. C., supra; Page on Wills, 2nd Ed., Sec. 1257.

The District of Columbia lapse statute has no application here since Elizabeth Donn Bryant had no issue.

Remaining for consideration are the words "If I am survived by my two sisters". Counsel for the minor defendants herein argues that these words constitute a condition precedent to either sister taking; that both must actually survive the testator. This is not consistent with the intention of testator as found by the Court. In addition, the Court having found as a matter of law that the sisters took as tenants in common, the meaning to be attached to the words is that testator was conditioning the bequest to each upon the survival of each. He was merely stating the law in this jurisdiction which requires a tenant in common to survive testator in order to take his share.

Minona Donn Smoot will take under the will one half of the decedent's real property situated in the District of Columbia. The remaining half lapsed and passes as intestate.

## Second Question

Under testator's will, plaintiff has been named "executor and trustee" with the direction to "distribute to the beneficiaries, devisees and legatees hereunder any property", etc. Plaintiff has requested the Court to determine whether the duties the instrument imposes upon it are sufficient to create an active trust. The applicable law on the question is found in Title 45, Sec. 1201, which states the generally accepted rule, that if the trustee has no duties to perform the trust is passive and executed "except where the title of such trustee is not merely nominal but is connected with some power of actual disposition or management of the property conveyed." The end result is that if the trustee has duties to perform here, the trust is active and the trustee will take title and administer and manage the properties; if the trustee has no duties other than to convey title, the trust is passive and title vests in the devisees. Betker v. Nalley, 78 U.S.App.D.C. 312, 140 F.2d 171; Dunlap v. Jones, D.C.D.C.1941, 38 F.Supp. 593, affirmed 76 U.S.App.D.C. 422, 128 F.2d 763.

It is for the Court to determine whether the words used by testator, in light of the circumstances surrounding the creation of the trust impose some duty upon the trustee other than merely to convey. As the Court said in Fidelity Union Trust Co. v. Mintz, 1939, 125 N.J. Eq. 52, 4 A.2d 44, 45:

"A trustee must conform to the provisions of the trust in their true spirit, intent and meaning, and not merely in their letter".

The circumstances in this case point out the answer to the problem. At the time of his death, testator was sole owner of five parcels of real property in the District of Columbia, with an assessed valuation of $43,145. He also owned an undivided one-third interest in a great number of other parcels of real property in the District of Columbia, with an assessed valuation of $156,069.

Counsel for plaintiff have stated to the Court that the properties have various types of improvements, in various states of repair, and will be most difficult to dispose of in an orderly fashion. Under these circumstances, it is apparent that to "distribute" carries more meaning than in the ordinary case; plaintiff is required to take active steps to preserve the property and to assure to the beneficiaries of the trust advantageous disposition of the property.

The trustee here has such a power of management or control as to bring it within the exception to the general rule found in Title 45, Sec. 1201, District of Columbia Code.

### Third Question

This question relates to property in which testator had a fractional interest and which he, together with the other owners, contracted to sell before his death. A rider was attached to these contracts of sale requiring the sellers to procure court approval of the sale as it related to the one-twenty-fourth interest of minors therein, in accordance with Sec. 213, Title 21, District of Columbia Code. Testator died before the conditions were fulfilled. Testator having been at the time of his death a resident of the state of Maryland, the property will pass under Maryland law if it be personalty, under District of Columbia law if it be real property. This is the proper Court to determine the character of the property. Holcomb v. Wright, 5 App.D.C. 76.

The District of Columbia follows the general rule that a contract of sale of land effects an equitable conversion of it into personalty, and if the vendor dies before the performance of the contract, his rights in it descend to his personal representative. Griffith v. Stewart, 31 App.D.C. 29. The issue here is whether the conditions in the riders, not having been performed, rendered the contract incapable of specific performance and hence preclude equitable conversion.

While the conditions were subsequently fulfilled by testator's executor, and the property sold, the Court must examine the contract as of the time of the death of testator to determine whether equitable conversion had taken place.

This exact question has not been ruled on in this jurisdiction. A statement of the general view, however, is found in In re De Stuers' Estate, 199 Misc. 777, 99 N.Y.S.2d 739, 742. In that case testator died after executing a contract of sale of land, but before securing, as he was bound to do under the contract, releases surrendering or judgments terminating the inchoate rights of dower of two prior wives. The Court said:

"The doctrine of equitable conversion provides that a court of equity will, for certain purposes, consider the interest of a vendor after the mere execution of a contract for the sale of realty as already converted into personal property and the interest of the vendee as realty, even prior to actual conversion, as if the mutual covenants contained in the contract had already been executed. The vendor having manifested an intention to convert the realty at a future date, the court will regard the contract as already performed and the vendee as the 'equitable owner.'"

There might conceivably be circumstances which would preclude such a conversion, but as the Court said in Flomerfelt v. Siglin, 155 Ala. 633, 47 So. 106, 108:

"It is true the contract must be an enforceable one at the death of either party thereto; but enforceability at the time of death of one of the parties refers to the validity of the contract, and not to events in the nature of conditions which may not have been performed because performance was not due at the time of the death of the testator. It is sufficient if these conditions can be performed by his representative."

The conditions embodied in the riders to the contracts in question were of just such a nature, and did not preclude equi-

table conversion. The interest of testator in these properties at the time of his death was personalty.

Counsel for plaintiff will submit an appropriate order conforming to the views expressed above. ·