PRYOR, Chief Judge:
 

 In this case, appellant Virginia L. Smith seeks review of an order of the trial court affirming a decision of the Employees’ Compensation Appeals Board (hereinafter “the Board”) terminating her disability compensation benefits as of December 30, 1981. On appeal, appellant asserts primarily that the trial court erred in reviewing the findings of the Board by applying an incorrect standard, and that she was denied due process because she was not allowed to see a medical report subsequently relied upon by the hearing officer and the Board in terminating her benefits. As to the claim that the trial court erred in its review of the decision of the Board, we find that the Superior Court lacked jurisdiction to consider the case under D.C.Code § 1-624.-28(c) (1981) because the United States Department of Labor (hereinafter “DOL”) participated, pursuant to an agreement with the District of Columbia, at a stage of the adjudication denying payment of benefits. Finding no deprivation of due process, we remand this case to the trial court for dismissal of the administrative claim for want of jurisdiction.
 

 I
 

 On January 26, 1971, while a teacher in the District of Columbia public schools, appellant was hit in the head with a full can of soda thrown by a student. As a result of the blow, appellant suffered a laceration of the scalp, cerebral concussion, cervical strain, and a contusion of the left maxillary arch. In February 1971, appellant began receiving disability compensation benefits pursuant to a determination by DOL that she was temporarily totally disabled.
 
 [1]
 

 On May 3, 1979, the provisions of the Merit Act governing disability compensation became effective. Under earlier legislation,
 
 [2]
 
 the District of Columbia was to assume responsibility for processing disability compensation claims of District of Columbia employees the day after the effective date of the disability compensation provisions of the Merit Personnel Act. The timing of the effective date of Title XXIII of the Merit Personnel Act, however, did not allow the District sufficient time to assume full responsibility for handling these claims. Consequently, on May 3, 1979, the District entered into an agreement with DOL under which the Department would continue to “receive and process up to the point of decision claims filed by employees of the District of Columbia.” Agreement Between the United States De
 
 *1326
 
 partment of Labor and the District of Columbia, March 3, 1979, at 2 (hereinafter “Agreement”). Originally scheduled to run until December 31, 1979, the Agreement was extended and remained in effect until January 19, 1981.
 

 In September 1980, the claims examiner in charge of appellant’s case at DOL referred the file to the District Medical Director, United States Department of Labor, Employment Standards Administration. Upon review of the file, the District Medical Director recommended that appellant’s condition be evaluated by an impartial medical specialist.
 

 Pursuant to this recommendation, appellant was evaluated by Dr. Henry Feffer on October 28, 1981.
 
 [3]
 
 Dr. Feffer found “no residual physical impairment which could have resulted from the blow that she received to her head while working as a school teacher.” Consequently, by compensation order dated November 26, 1981, appellant’s benefits were terminated by the District’s claims examiner effective December 30, 1981.
 

 Appellant requested a hearing on the claims examiner’s order which was held on April 22, 1982. The hearing officer found that “the evidence does not support any residual [sic] of physical impairment, which could have resulted from the blow the claimant received” but modified the claims examiner’s compensation order to extend benefits thru February 28, 1982. On June 23, 1982, the Deputy Director of the Department of Employment Services reversed the hearing officer’s recommendation and reinstated the claims examiner’s compensation order terminating benefits on December 30, 1981.
 

 Ms. Smith then filed a petition with the Board seeking review of the Deputy Director’s order. After a hearing, the Board concluded that “the record contains substantial evidence to support the determination that the disability ... is no longer causally related to the accepted injury,” and affirmed the compensation order terminating benefits after December 30, 1981. A petition for reconsideration was denied by order dated July 29, 1983, upon the Board’s conclusion that “no errors of law or fact were established therein.”
 

 Appellant then sought review of the Board’s order in Superior Court. After a hearing, the trial court found “[t]he evidence upon review does not establish that the petitioner’s disability is causally related to the employment injury,” and affirmed the decision of the Board. This appeal followed.
 

 II
 

 The threshold question presented in this case is whether petitioner was entitled to seek judicial review of the Board’s order terminating her disability compensation benefits. While the issue of jurisdiction was apparently not raised before the trial court, we can consider it here.
 
 See In re Estate of Dapolito,
 
 331 A.2d 327, 328 (D.C.1975) (whenever it affirmatively appears that the jurisdiction fails, the objection may be raised by the parties or the court itself);
 
 Paton v. District of Columbia,
 
 180 A.2d 844, 845 (D.C.1962) (issue of jurisdiction may be raised
 
 sua sponte
 
 by appellate court). After consideration of the record, as well as relevant statutory and legislative authority, we conclude that the trial court lacked jurisdiction to review the Board’s order.
 

 The Merit Personnel Act generally provides for judicial review in Superior Court of actions of the Mayor relating to disability compensation.
 
 See
 
 D.C.Code § 1-624.28 (1981). After establishing the Mayor’s authority to “(1) [e]nd, decrease or increase the compensation previously awarded; or
 
 *1327
 
 (2) [a]ward compensation previously refused or discontinued,”
 
 id.
 
 § l-624.28(a)(l), (2), the Merit Personnel Act provides, “[t]he action of the Mayor ... in allowing or denying a payment under this subchap-ter may be reviewed by the Superior Court of the District of Columbia.”
 
 Id.
 
 § 1-624.-28(b).
 

 Significantly, however, the Merit Personnel Act establishes one exception to the broad right of a claimant to seek judicial review of the Mayor’s action in a disability compensation case. Under this exception:
 

 [A]n action in which the United States Department of Labor (or other federal authority) participated at any stage of the adjudication allowing or denying payment under this subchapter pursuant to an agreement with the District of Columbia is:
 

 (1) Final and conclusive for all purposes and with respect to all questions of law or fact; and
 

 (2) Not subject to review by a court by mandamus or otherwise.
 

 Id.
 
 § l-624.28(c). Thus, the question presented is whether, under the terms of this provision, the DOL participated in Ms. Smith’s case at any stage of the adjudication denying payment of disability benefits pursuant to an agreement with the District. An answer to this question requires a brief historical overview of the circumstances surrounding the shift in the processing of disability compensation claims from DOL to the District.
 

 A.
 

 Under the disability compensation statute for federal employees, a claimant is precluded from seeking judicial review from an action of the Secretary of Labor.
 
 See
 
 5 U.S.C. § 8128(b)(1), (2) (1982);
 
 Mason v. District of Columbia,
 
 395 A.2d 399, 402 (D.C.1978) (discussing federal statute);
 
 Reep v. United States,
 
 557 F.2d 204, 207 (9th Cir.1977);
 
 Joyce v. United States,
 
 474 F.2d 215, 218 (3d Cir.1973);
 
 Bailey v. United States, Through the Department of the Army,
 
 451 F.2d 963, 965 (5th Cir.1971);
 
 Gunston v. United States,
 
 358 F.2d 303 (9th Cir.),
 
 cert. denied,
 
 384 U.S. 993, 86 S.Ct. 1904, 16 L.Ed.2d 1010 (1966). Thus, during the period when disability compensation claims of District employees were handled by DOL under the federal statute, no judicial review of such claims was available.
 

 The Merit Personnel Act, which transferred statutory responsibility for processing disability compensation claims of District employees from DOL to the District, established the right of claimants to seek judicial review in Superior Court of actions of the Mayor.
 
 See
 
 Merit Personnel Act § 2328(b). On the effective date of the Merit Personnel Act, however, the District of Columbia was not prepared administratively to assume full responsibility for the handling of these claims. To prevent “a substantial disruption in the processing of claims,” the District entered into an agreement with DOL providing for shared responsibility in administering claims. Agreement at 2. Under the Agreement, DOL “eontinue[d] to receive and process up to the point of decision claims filed by employees of the District of Columbia seeking compensation for work related injuries.”
 
 Id.
 
 The Mayor had “authority and responsibility for issuing decisions, holding hearings and deciding appeals taken from decisions made with respect to such claims.”
 
 Id.
 

 [4]
 

 With passage of the Merit Personnel Act and implementation of the Agreement,
 
 *1328
 
 DOL faced the prospect of processing disability compensation claims under two distinct statutory schemes. In effect, DOL would be required to apply the provisions of the Merit Personnel Act when processing claims of District employees, while federal statutes would govern the claims of federal employees. As noted, under this dual system, judicial review was available to District employees under the Merit Personnel Act, but was unavailable to federal workers under 5 U.S.C. § 8128 (1982).
 

 DOL objected to applying dual standards. In particular, it appears that DOL opposed the judicial review provisions in the Merit Personnel Act and threatened to cease processing the District’s claims under the Agreement if judicial review of such claims was available. According to Barbara Washington, Assistant City Administrator for Intergovernmental Relations, the reasons for DOL’s position were:
 

 They do not want their examiners operating under two (2) different laws, and they do not want their examiners to be required to leave work to testify in court when they are suffering under an ever increasing workload.
 

 Letter from Barbara Washington to D.C. Councilmember William Spaulding, April 16, 1980 (discussing DOL’s position on permanent amendments to Title XXIII of the Merit Personnel Act pertaining to Judicial review).
 

 In response to this situation, the District of Columbia Council (hereinafter “the Council”) passed emergency legislation. The purpose of the legislation was:
 

 [t]o amend the provisions of Title XXIII to facilitate the entering into of an agreement with the U.S. Department of Labor to provide for the uninterrupted processing of disability compensation claims.
 

 District of Columbia Government Comprehensive Merit Personnel Act Disability Compensation Emergency Amendments of 1979, 26 D.C.Reg. 897 (1979). Among other things, this emergency legislation eliminated judicial review of disability compensation claims by amending, on a temporary basis, § 2328(b) of the Merit Personnel Act.
 
 Id.
 
 § 2(h).
 
 [5]
 

 In early 1980, while the Agreement was still in effect, the Council began considering permanent amendments to the Merit Personnel Act. Strong sentiment emerged in support of restoring judicial review of actions of the Mayor under the disability compensation provisions of the Merit Personnel Act. Still, the Council confronted the problem of accommodating DOL’s refusal to be subject to judicial review on claims it processed for the District under the Agreement. The provision now contained in § l-624.28(c) effectuated a compromise between these competing goals. Judicial review of disability compensation claims was restored by allowing the emergency legislation to lapse, thereby permitting § 2328(b) of the Merit Personnel Act to become effective. The provision eliminated judicial review, however, for actions “in which the United States Department of Labor ... participated at any stage of the adjudication allowing or denying payment ... pursuant to an agreement with the District of Columbia_”
 
 Id.
 
 § 1-624.-28(c).
 
 [6]
 

 B.
 

 Given this background, we now consider whether the circumstances of appellant’s
 
 *1329
 
 case fall within the ambit of § l-624.28(c) barring judicial review. We conclude that they do.
 

 In this case, appellant started receiving disability compensation benefits in February 1971. She continued to receive benefits throughout the 1970’s. During this time, appellant periodically provided DOL with documentation to establish that the condition resulting from her injury was ongoing.
 

 In September 1980, at a time when the Agreement was in effect, the claims examiner in charge of monitoring appellant’s case referred the file to the District Medical Director. The District Medical Director, upon review of the file, recommended that an impartial medical specialist evaluate appellant’s condition. Based on this specialist’s findings, appellant’s benefits were terminated.
 

 In this case, therefore, DOL did not simply engage in routine processing of appellant’s claim during the operation of the Agreement. Rather, DOL conducted a searching review of appellant’s case, raised questions, and ordered evaluation by an impartial specialist. This sequence of events led directly to termination of appellant’s benefits. In light of these facts, it is clear that DOL participated “at any stage of the adjudication ... denying” appellant payment of benefits.
 
 Id.
 

 [7]
 

 Our conclusion that the facts of this case fall within the exception in § 1-624.-28(c) is bolstered by our recognition that the underlying purpose of the provision is to insulate DOL from judicial review of actions taken pursuant to the processing of claims of District employees under the Agreement. Were we to decide that a case such as this one falls outside the exception in § l-624.28(c), DOL employees could be required to participate in court proceedings reviewing termination of a claimant’s benefits. As noted above, § l-624.28(c) was passed principally to preclude just such involvement.
 

 We note further that a narrower construction of the term “adjudication” in § 1-624.28 — limiting it to cases in which DOL participated under the Agreement in proceedings before the hearing officer or the Board — would render the provision a nullity. Under the Agreement, DOL retained responsibility only to “receive and process up to the point of decision” claims of District employees. The District, in contrast, had responsibility for issuing decisions, holding hearings, and deciding appeals. Thus, under the terms of the Agreement, there were no cases in which DOL participated in proceedings before the hearing officer or the Board. To avoid creating an exception that excludes nothing, therefore, we must construe “adjudication” in § 1-624.28 to refer to involvement by DOL in the processing of claims of District employees at the pre-hearing stage.
 

 We are mindful, of course, that the Agreement speaks only of DOL’s responsibility to “process claims up to the point of decision” and does not mention participation by the agency in the audit of cases as occurred here. This raises the question as to whether the statutory language in § l-624.28(c), referring to participation by DOL “at any stage of the adjudication ... pursuant to an agreement,” includes the review and audit of claims. In our view, three reasons strongly support the conclusion that it does.
 

 First, by its terms, § l-624.28(e) eliminates judicial review for “an action” in which DOL participated under the Agree
 
 *1330
 
 ment. Under § l-624.28(a) and (b) “an action” is broadly defined to include steps taken by the Mayor to “[e]nd, decrease or increase the compensation previously awarded; or ... [a]ward compensation previously refused or discontinued.” This language strongly suggests, therefore, that judicial review is precluded not only for actions of DOL taken to process new claims, but also for steps taken, as here, to terminate claims previously awarded.
 

 Second, as noted earlier, it appears that in actual practice under the Agreement, DOL did handle the review and audit of claims already awarded. Thus, the conclusion reached here conforms our interpretation of the statute to actual practice under the Agreement.
 

 Finally, the problems for DOL associated with judicial review apply equally whether they participated under the Agreement in the initial processing of claims, or in the review of claims subsequently terminated. In light of this, our conclusion effectuates the goal of the statutory exception which is to protect officials at DOL from the requirement that they appear in court.
 

 Given our determination that the facts of this case fall within the exception to judicial review in § l-624.28(e), we conclude that the Board’s decision terminating appellant’s benefits is “[fjinal and conclusive for all purposes and with respect to all questions of law or fact.”
 
 Id.
 

 [8]
 

 III
 

 Independently of her administrative claim, appellant also asserts that the failure of the District of Columbia Division of Disability Compensation to provide her with a copy of the report of the impartial medical specialist prior to proceedings before the Hearing Officer and Board constituted a violation of due process. We disagree.
 

 On the present record, it appears that appellant’s sole attempt to obtain the report was a request in a letter dated December 23, 1981 to Constance P. Nowlin, Chief of the Division of Disability Compensation, District of Columbia Department of Employment Services. The record reflects no request for the report at proceedings before the Hearing Officer or Board, and no attempt to have Dr. Feffer subpoenaed under D.C.Code § 1-624.26. Given these facts, we find no deprivation of due process in the fact that appellant did not receive a copy of the report.
 

 Remanded for entry of an order in accordance with this opinion.
 

 [1]
 

 . Prior to passage and full implementation of Title XXIII of the District of Columbia Government Comprehensive Merit Personnel Act of 1978 § 2301
 
 et seq.,
 
 D.C.Code § 1-624.1
 
 et seq.
 
 (1981) (hereinafter "Merit Personnel Act”), DOL processed claims for disability compensation filed by District of Columbia employees.
 

 [2]
 

 . District of Columbia Self-Government and Governmental Reorganization Act § 204(e), D.C. Code § 1-242(3) (1981) (hereinafter “Self-Government Act”).
 

 [3]
 

 . By this time, the District’s Department of Employment Services had assumed responsibility for processing worker's compensation claims by District of Columbia employees.
 

 [4]
 

 . The precise division of responsibilities between DOL and the District for administering claims during the operation of the Agreement is unclear. Nevertheless, it does appear that DOL retained possession of all active case files during the time the Agreement was in effect, and handled the routine processing of claims that had been awarded. In addition, DOL continued to conduct audits on claims that had been awarded to verify the continued eligibility of claimants.
 
 See
 
 Letter from Ivanhoe Donaldson to Ralph Hartman, April 21, 1981 (discussing transfer of case files from DOL to the District and backlog of audits to be conducted).
 

 [5]
 

 . The emergency amendment also conformed other aspects of the Merit Personnel Act, on a temporary basis, to the federal workers’ compensation statute. The emergency legislation was passed initially in July 1979 and then was reenacted in November 1979 and February 1980.
 

 [6]
 

 . A Council staff member explained the purpose of the amendment as follows:
 

 The effect of the amendment is to prohibit judicial review of decisions where the Federal Department of Labor manages the system and to authorize judicial review of decisions when the District of Columbia is fully in charge of the Disability Compensation System.
 

 District of Columbia Government Comprehensive Merit Personnel Act Amendments of 1980: First reading before Council of the District of Columbia, Thirty-first Legislative Session, April
 
 *1329
 
 22, 1980 (explanation by Mr. Bruce French on purpose of amendment).
 

 [7]
 

 . Our holding here does not eliminate judicial review of all disability compensation claims processed by DOL during the Agreement. Only those claims initially filed during the Agreement, and those claims which were terminated following a review conducted during the Agreement, are precluded from judicial review.
 

 [8]
 

 . Because we find the Board’s decision to be unreviewable, we do not consider appellant’s claim that the Board erred in denying her petition for reconsideration.